## THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* EMMA BECK.

*Municipal Corporations—Obstruction in Streets—City Responsible for Failure of Electric Company to Light Streets According to Contract.*

Plaintiff was injured in consequence of driving against a pile of bricks lying in a city street on a dark night. There was no lantern on the obstruction and the electric lights ordinarily burning in the street were extinguished on that night and for several evenings before and afterwards. The city is empowered to regulate the use of its streets and to cause the same to be lighted. A municipal ordinance directs that when any pile of bricks or other building material is left in a street, it shall be designated at night by a lighted lamp. The electric lights belonged to a corporation which had contracted to light the street, and the failure to do so on the night in question was owing to a strike by the employees of the company. *Held*, that the municipality is liable in an action for the damages sustained by plaintiff, since it is responsible for the failure of the electric company to light the street, and the evidence shows that the accident would not have happened if the street had been lighted, notwithstanding the neglect of the builder to place a lantern on the obstruction.

Appeal from Baltimore City Court (SHARP, J.)

*Defendant's 1st Prayer.* It appearing from the testimony in this cause that at the time of the injuries to the plaintiff, the Mayor and City Council of Baltimore had a contract with The United Electric Light and Power Company to light the streets of the city with electricity, and that it did not own or control

the street electric lights, and that at the time of said injuries the electric light at the corner of Fulton avenue and Walbrook avenue, was allowed to go out, owing to a strike of the employees of said company, and that the Mayor and City Council of Baltimore had no means or power at its disposal to keep said light lighted during the pendency of said strike, the verdict must be for the defendant, as to said Mayor and City Council of Baltimore.    (*Refused*).

*Defendant's 2nd Prayer.* It appearing from the testimony in this cause, that the injuries to the plaintiff were caused by the failure of Messrs. Thomas & Morgan to have a light burning upon the obstruction in the street at the corner of Fulton and Walbrook avenues, placed there by them, then there is no liability on the part of the Mayor and City Council of Baltimore on account of said neglect and the verdict must be for the defendant, as to said Mayor and City Council of Baltimore. (*Refused*).

*Defendant's 3rd Prayer.* There is no evidence in this cause legally sufficient to prove any negligence on the part of the Mayor and City Council of Baltimore, causing the plaintiff's injuries, and the verdict must be for the defendant, as to said corporation.    (*Refused*).

*Defendant's 4th Prayer.* If the jury believe that the injuries to the plaintiff were caused by the failure of the defendants, Thomas & Morgan, to keep a light burning on the obstruction placed by them in the street at the point where said injuries occurred, then the Mayor and City Council of Baltimore is not responsible for such failure, the verdict must be for the defendant.    (*Refused*).

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE and SCHMUCKER, JJ.

*Charles W. Field* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellant.

Plaintiff proved that a large electric arc light which was swung over the corner was also out on the night in question,

and that if that light had been burning, the absence of the builders' lantern would not have been material. The question therefore arises whether or not it was negligence on the part of the city that this arc light was not burning on the night in question? On this point the uncontested and uncontradicted proof on the part of both plaintiff and defendant, was, that this light was out for several hours on the night in question, owing to the prevalence of the great electric light strike, of the spring and summer of 1900, when half the lights in the city were out from time to time almost every night. It was clearly proven in fact, that this strike had been going on for a month at that time; that all the skilled electric light linemen and workmen of the electric lighting company, which owned and worked these lights, under contract with the city, had gone out on a strike, had refused to work themselves, and had refused to let anybody else work. It was proved that the city owned no electric lights, had no electric lighting facilities or power, and contracted with The United Electric Light & Power Company to furnish electric light to it at certain places throughout the city for a specified sum. And therefore, when these electric light employees went on a strike the city was powerless to fill their places because it had no employees who knew anything whatever about handling electric arc lights; all it could do was to urge the electric light company to secure other employees to do the work. This it repeatedly did, and in addition thereto it put up provisional naptha lamps over the city wherever it was necessary to do so, to take the place of the arc lights. That company did all in its power to remedy the evil, but the going out of the light in question, as well as many other lights, was due to the fact that their striking employees, who were skilled laborers, refused to work themselves, and refused to let anybody else work. They used every means in their power to procure additional workmen to keep the lights burning, but were powerless on account of the conduct of the strikers, so to do. If this be true, we are utterly unable to see in what respect either the city or the electric light company were guilty of any negligence or default in failing to keep

this electric arc lamp burning. We may concede that under the decision in the case of *O'Donnell* v. *The Mayor and City Council of Baltimore*, 53 Md. 110, the city was responsible for the negligence or default of the electric light company, that having contracted with that company to keep the lights burning in the public streets, it was responsible for what the contracting company did, just as much so as if the city itself had done it. This was practically what was decided by the case just quoted; but in the case at bar there is absolutely no evidence of any negligence on the part of either the electric light company or the city. Both did their best to prevent the evil.

There was direct proof of negligence on the part of the contractor in the *O'Donnell case* and no proof of negligence on the part of the contractor or of the city in the case at bar. For these reasons it is submitted that the defendant's first, second and third prayers should have been granted, and that the jury should have been instructed to render a verdict for the defendant. If the plaintiff's injuries were caused by the failure of Thomas & Morgan to keep a lantern burning upon their brick pile, then, undoubtedly, under *Sinclair's case*, the defendant was not responsible. If, on the other hand, the plaintiff's injuries were caused by the failure of the city to keep its electric arc light burning at the same corner, then said failure, as the record will clearly show, was not due to any negligence or default on the part of either the city or of the light company, and if so, then the defendant was not responsible upon that theory. The city of Baltimore is not an insurance company, and can only be held responsible for injuries to persons passing through its streets when such injuries have been caused by some negligent act of commission or omission on the part of the city, or those working under it or contracting with it. The record absolutely fails to show by competent testimony either on the part of the plaintiff or on the part of the defendant, that the defendant or its contractor, the electric light company were guilty of doing anything which they ought not to have done, or of failing to do anything which they ought to have done.

The most that can be said for the plaintiff's case here is, that her evidence left a doubt as to whether her injuries were caused by the city's failure to keep its arc light burning, or by Thomas & Morgan's failure to keep their builders' lantern burning. Undoubtedly, whether or not the arc light was burning, if Thomas & Morgan's lantern had been burning, the accident could never have occurred; or if it had, it would have shown such a clear case of contributory negligence on the part of the plaintiff, that no Court would have allowed the case for a moment to go to the jury. *Sinclair's case,* 59 Md. 592.

*Lee S. Meyer,* for the appellee.

It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for public travel; they cannot fold their arms and shut their eyes and say they have no notice. *Keene* v. *Havre de Grace,* 93 Md. 34; *Baltimore* v. *Marriott,* 9 Md. 160; *Baltimore* v. *Pendleton,* 15 Md. 12; *County Commissioners* v. *Hamilton,* 60 Md. 341; *County Commissioners* v. *Duckett,* 20 Md. 478; *County Commissioners* v. *Gibson,* 36 Md. 229; *Allegany County* v. *Eyler,* 49 Md. 257; *Balto.* v. *O'Donnell,* 53 Md. 110; *City of Atlanta* v. *Perdue,* 53 Ga. 607.

In *Sinclair's case,* 59 Md. 592, there was a mere failure to observe a city ordinance is not placing or having a light upon an obstruction in the streets. In the case at bar, in addition to a similar failure, there was also a failure on the part of the city in its imperative duties to light the streets, and to abate nuisances, in that it allowed the obstruction to remain in the street an unreasonable length of time (which was a question for the jury), and failure in the performance of other duties incumbent upon it.

The evidence showing negligence on the part of the appellant the suit can be maintained as against said appellant regardless of any concurrent negligence. *Rowe* v. *B. & O. R. R.,* 82 Md. 502; *Balto.* v. *O'Donnell,* 53 Md. 110.

Even though the negligence of the appellant taken by itself

would not have brought the same or like result.   8 *Am. & Eng. Ency.*, p. 375, note "Injury from two causes;" *Lakeshore R. Co.* v. *McIntosh*, 140 Ind. 261; *Shearman & Redfield on Negligence*, 5 ed., sec. 14.

And the appellant being bound to perform certain duties cannot relieve itself from the burden of such obligation by any contract, which it may make for its performance by another person.   *Shearman & Redfield on Negligence*, 5th ed., sec. 14; *Baltimore* v. *Pendleton*, 15 Md. 12; *M. & C. C. of Balto.* v. *O'Donnell*, 53 Md. 110; *Eyler* v. *Co. Commrs.*, 47 Md. 257. It is no excuse for a city leaving a street unlighted at night, that the city had contracted with another to light the street. *Hayes* v. *West Bay City*, 91 Mich. 423.

BRISCOE, J., delivered the opinion of the Court.

. The plaintiff, who is a married woman, brought a suit, on the 20th day of August, 1900, in the Superior Court of Baltimore City against the Mayor and City Council of Baltimore, for personal injuries received by her while driving along one of the public avenues of Baltimore City, known as Fulton avenue.   The case was tried before a jury in the Baltimore City Court and the plaintiff recovered a judgment for $1,000.

The cause of action is thus stated and set out in the plaintiff's declaration; that Messrs. Thomas and Morgan of the City of Baltimore and each of them placed and allowed to remain for a long time a large quantity of bricks and other building materials in the public highway of Baltimore known as Fulton avenue, at or near its intersection with Walbrook avenue; that these bricks and materials were placed so as unnecessarily to obstruct the highway, in an improper and negligent manner, and during the night-time were left without a light or signal to indicate danger, as required by the city ordinance; that on the night of June 26th, 1900, the defendant negligently permitted the obstructions to remain on and upon Fulton avenue, at or near its intersection and negligently permitted the avenue to be and remain in bad repair and condition; omitted to have it properly lighted in the night-time and per-

mitted it to remain in an unsafe condition for ordinary travel, in consequence whereof a carriage with the plaintiff, passing through the avenue, collided with the obstruction, and was thereby overturned, the plaintiff thrown out, and in consequence thereof was severely and permanently injured; that the injuries to the plaintiff were directly caused by the negligence and want of care of the defendant and without fault, or want of care on the part of the plaintiff, directly thereto contributing.

The questions presented for our consideration arise upon exceptions to the granting of the plaintiff's prayers and to the rejected prayers of the defendant. At the close of the plaintiff's case, the defendant offered three prayers, to the effect that the plaintiff had offered no evidence of negligence on the part of the city and that the case be withdrawn from the jury. We find no error in the ruling of the Court upon the rejection of the prayers in this exception and as they were subsequently offered at the close of the case, we will consider them on the defendant's second exception.

It appears from the evidence that the plaintiff was in a carriage with her husband and child, on the night of the accident and was driving along Fulton avenue, Baltimore, and drove into a pile of bricks lying in the street and was injured. The bricks had been placed in the street by certain builders and contractors, who were building houses at or near the place of the accident. The evidence further shows that there was no light burning at the time or at the place of the accident, either on the pile of bricks or in the street; *that the city electric light was out and had not been burning at Fulton and Walbrook avenues for several nights before and after the accident,* and there was no light burning to point out the obstruction in the street.

There was also testimony that it was a dark night and the entire avenue was dark; that the bricks were scattered from the curb-stone to the car track, so as to obstruct the free passage of vehicles except down the car track.

It is contended upon the part of the appellant that if any liability exists at all in this case it rests upon Messrs. Thomas & Morgan, the contractors and builders, and not upon the de-

fendant, the Mayor and City Council of Baltimore, because by ordinance (sec. 87 of Art. 48 of the City Code), it is provided that " whenever any piles of bricks, stones, lumber or other building material shall be left in any of the streets, lanes, or alleys of the city, during the night, they shall be designated by displaying a lighted lamp or lantern at such part of the same,.as to be easily observed by persons passing along the street ; " and that the injuries to the plaintiff were caused by the failure of the contractors to keep a light burning on the obstruction placed by them in the avenue where the accident happened.

The question, then, comes to this, what was the duty of the defendant under the evidence in the case in respect to the plaintiff at the time of the accident and was the injury caused by the failure of the defendant to perform that duty ?

By sec. 6, ch. 123, of the Acts of 1898 (city charter), the Mayor and City Council of Baltimore shall have full power and authority, to regulate the use of the streets, highways, roads, public places and sidewalks by foot passengers, vehicles, &c., and prevent encroachments thereon and obstructions of the same.    To erect lamps in any of the streets, lanes or alleys of the city, and cause the same to be lighted, at the expense of the city, and to provide for and regulate the construction, inspection and repairs of all private and public buildings within the city.

There can be no question, then, that as the municipal authorities of Baltimore, had the power and authority to regulate and to remove obstructions from its streets, and to cause the streets to be lighted at the expense of the city, it was its plain duty to have kept the avenue lighted and in a safe condition for public travel, on the night of the accident, in question.

The law is well settled that if it negligently fails so to do, and persons acting without negligence on their part are injured while passing along its highways, the city is liable in damages for the injuries caused by the neglect, and the person so injured can recover against the municipality therefor.    *Mayor and City Council of Baltimore v. Marriott,* 9 Md. 160 ; *Mayor and City Council of Baltimore v. Pennington,* 15 Md. 12.

The Court below, we think properly stated the law of the case in the plaintiff's second prayer, which was to the effect that if the jury believed that the defendant in the night-time of June 26th, 1900, negligently failed to properly light Fulton avenue at or about Walbrook avenue, and that it was a public highway in the city, and that in consequence of the failure so to light this highway the plaintiff was injured while traveling in the night-time in a carriage over the highway, and using such care as persons of ordinary prudence would use under like circumstances, then their verdict must be for the plaintiff.

We find no error in the rejection of the prayers submitted on the part of the defendants. The first prayer was properly rejected, under the doctrine laid down by this Court in *Rowe v. B. & O. R. R. Co.*, 82 Md. 493 ; *Baltimore v. O'Donnell*, 53 Md. 110, and *Eyler v. County Commissioners*, 49 Md. 257.

The municipality could not escape liability, for its neglect of duty in not having its streets and avenues lighted at night, because of the failure of an electric light company who had contracted to light the streets, had neglected its duty. The neglect of the company would be the neglect of the city. *Hayes v. West Bay City*, 91 Mich. 419.

The defendant's second and fourth prayers asserted propositions of law not applicable to the case and are controlled by the decisions of this Court in *Conowingo Bridge Co. v. Jacob Hedrick*, 95 Md. 669 ; *Baltimore v. O'Donnell*, 53 Md. 110, and *Washington and Georgetown Rd. v. Hickey*, 166 U. S. 522.

The vice of these prayers consisted also in the omission to state, that the injury was caused *solely* by the failure of the contractors, Thomas and Morgan, to have a light burning on the obstruction placed by them in the street, whereas it submitted the proposition that if the injury was caused by the negligence of the contractors, &c., the city was not responsible for such failure. The evidence shows, however, that if the city had performed its duty in having the street lighted on the night of the accident it would have been a sufficient warning of the place of danger and the accident would not have oc-

curred, notwithstanding the failure and neglect of the contractors to have a light burning on the obstruction, as required by the ordinance.

The case of *Sinclair* v. *The Mayor, &c.*, 59 Md. 595, relied upon by the appellants is clearly distinguishable in principle from that involved in this case.

The facts disclosed by the proof here if found by the jury to be true, were legally sufficient to justify the verdict found for the plaintiff and there being no error in the rulings of the Court of which the defendants can complain, the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided January 14th, 1903.)