STATE OF MARYLAND, Use of Amanda Cullen, *vs.*
THE CRISFIELD ICE MANUFACTURING
COMPANY, a Corporation.

*Negligence: electric wire left hanging on public thoroughfare.
Contributory negligence: questions for the jury.*

To leave a live electric wire of high voltage, hanging in a
public thoroughfare, from Saturday to Wednesday, almost
touching the ground, is negligence.                    p. 522

One who would pick up such a wire in spite of warning and
play with it and endeavor to make others touch it would be
guilty of contributory negligence.                     p. 523

Any evidence, however slight, that goes to contradict the defense
of contributory negligence, is for the consideration of the
jury.                                                  p. 523

*Decided November 13th, 1912.*

Appeal from the Circuit Court for Dorchester County
(Jones, J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Pearce, Burke, Thomas, Pattison and Stockbridge, JJ.

*William Colton* (with whom were *Henry J. Waters* and
*Goldsborough & Fletcher* on the brief), for the appellant.

*Joshua W. Miles* (with whom were *George H. Myers,
Emerson C. Harrington* and *Clarence P. Lankford* on the
brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

There is but a single question presented for consideration by the record in this case. Did the trial Court err in directing a verdict for the defendant by granting the second prayer of the defendant corporation, to the effect "that by the uncontradicted evidence in the case the negligence of Gordon Cullen, plaintiff's son, directly contributed to the accident which caused his death?"

Gordon Cullen was a boy eleven and a half years of age at the time of his death, on Wednesday, November 3rd, 1910. About six o'clock in the evening of that day he was playing with a hoop on one of the streets of the town of Crisfield. An electric light wire of the defendant which had become detached on the previous Saturday from the arm designed to support it was hanging so as to touch or nearly touch the ground by a gutter which ran along the side of the street. This wire, when in use, carried a current of 2200 volts, a deadly current to persons who might come in contact with it. The child Gordon did so come in contact with it, and with a scream fell dead, and when he was finally picked up his right and left hands were both badly burned. Such in substance is the undisputed evidence in the case. On the other points there is more or less contradiction. But from the evidence thus far recited it will be clear that the defendant company was guilty of such negligence as would render it liable, in leaving a deadly wire for such length of time where passers-by might come in contact with it.

The defense relied on is that of contributory negligence. Three witnesses, Walter Braxton, Marion Pruitt and Vernion Webb, were called, who testified substantially to the effect that on the evening in question Gordon, who had been playing with a hoop, as he came to where the wire was hanging down or lying on the side of the gutter, picked up the wire and tried to get two colored girls who were passing to take hold of it, and also Pruitt. That Braxton who was passing told the girls not to touch it, and said to Gordon to put it down, that it was dangerous, that the lights would soon be

turned on and that then he, Gordon, would be killed, and Pruitt further testified that a similar caution was given by a colored woman who was also passing. It is further testified that the lights had not been turned on when this took place, and that very soon thereafter the lights were turned on and Gordon fell, lifeless. If there was nothing else in the evidence contradicting this testimony, the prayer of the defendant with regard to contributory negligence would have been perfectly proper, and a verdict should have been directed for the defendant as was done. *Lewis* v. *B. & O. R. R.,* 38 Md. 588 ; *B. & O. R. R.* v. *Miller,* 29 Md. 252.

There was some testimony given by the plaintiff tending to show that the lights were burning when the accident happened, and some on the part of the defendant to the effect that the wire had been cut before the time of the accident. If it be a fact that the lights were burning before Gordon came in contact with the wire it would have been impossible for him to have handled the wire as testified to by the three witnesses named, but he would have met his death at the first instant of contact. The testimony upon the lights being lighted *vel non,* while not a contradiction in terms of the evidence given by Braxton, Pruitt and Webb, is such in effect, and, therefore, there being some evidence contradictory of that adduced by the defendant to show contributory negligence, the question was one proper to have been submitted to a jury, rather than ruled upon by the Court as a matter of law. It is not the present purpose to express any opinion as to the relative weight of the evidence on this point, or which is entitled to the greater amount of credence, but merely to point out that the evidence of contributory negligence can not properly be said to be uncontradicted, and if there be any contradiction, however slight in the view of the Court, it is bound to be submitted to the jury.

So, too, with regard to the cutting of the wire. The testimony is undisputed that if the wire had been cut the wire would have become a "dead" wire, and the lights supplied with current from it would not have burned; but all of the

witnesses, whether plaintiff's or defendant's, who speak of the lights at all, speak of them as burning on that evening immediately after the accident.

Some reliance apparently was placed by the defendant on the case of *Cowen et al.* v. *Dietrick,* 101 Md. 46, but one fact completely distinguishes that case from this, namely, that there was no evidence whatever of any negligence on the part of the defendant.

For error in the granting of the defendant's second prayer the judgment in this case must be reversed.

> *Judgment reversed and case remanded for a new trial; costs to be paid by the appellee.*